**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| QUDSIA HUSSAINI, | No. C10-4083-MWB |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT GELITA USA, INC.'S MOTION TO DISMISS** |
| GELITA USA, INC., | |
| Defendant. | |

———————————

**TABLE OF CONTENTS**

*I.* *INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.* *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B.* *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.* *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *A.* *Standards For A Motion To Dismiss* . . . . . . . . . . . . . . . . . . . . . . . 8
   *B.* *NLRA Preemption* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      *1.* **Garmon** *framework* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      *2.* **Garmon** *analysis of Hussaini's causes of actions* . . . . . . . . 16
         *a.* *Discharge in violation of public policy claim* . . . . . . . 16
         *b.* *Promissory estoppel claim* . . . . . . . . . . . . . . . . . . . 21
         *c.* *Fraudulent misrepresentation claim* . . . . . . . . . . . . . 23

*III.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Labor relations are the National Labor Relations Board's ("the NLRB") sandbox. This case raises the question of whether plaintiff's Iowa common law claims against her former employer for wrongful discharge in violation of public policy, promissory estoppel, and fraudulent misrepresentation fall within that sandbox and are, therefore, preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA").[1]

## I. *INTRODUCTION AND BACKGROUND*

### A. *Procedural Background*

On August 5, 2010, plaintiff Qudsia Hussaini filed a petition in Iowa District Court for Woodbury County against her former employer, Gelita USA, Inc. ("Gelita"). In her petition, Hussaini alleges the following three causes of action against Gelita: (1) a common law claim of wrongful discharge in violation of Iowa public policy; (2) a common law claim for promissory estoppel; and (3) a common law claim for fraudulent misrepresentation. On August 30, 2010, Gelita removed the case to this court, pursuant to 28 U.S.C. §§ 1332 and 1441, on the basis of diversity jurisdiction. On this same date,

---

[1] In 1935, Congress passed the NLRA, commonly called the "Wagner Act," ch. 372, 49 Stat. 449 (codified as amended at 29 U.S.C. § 151 *et seq.*). In its passage of the NLRA, Congress had the intent to enact comprehensive federal law of labor relations. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110-11 (1989). The NLRA implemented a comprehensive federal regulatory code governing labor relations in which employees were guaranteed the basic right to collectively bargain with their employers; the right of employees to strike; prohibited certain "unfair labor practices"; and established the National Labor Relations Board to oversee this new regulatory scheme. *See Polish National Alliance v. N.L.R.B.,* 322 U.S. 643, 647 (1944) (noting that "'[b]y [the NLRB], Congress in order to protect interstate commerce from adverse effects of labor disputes has undertaken to regulate all conduct having such consequences that constitutionally it can regulate").

Gelita filed a Motion to Dismiss. In its motion, Gelita seeks dismissal of the petition on the ground that Hussaini's claims are all preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* Alternatively, Gelita seeks dismissal of Hussaini's wrongful discharge in violation of public policy claim for failure to state a cause of action, arguing that the Iowa Supreme Court would not recognize such a wrongful discharge claim grounded on violations of the NLRA. Gelita also seeks dismissal of Hussaini's wrongful discharge in violation of public policy claim on the ground that Hussaini has failed to state a claim upon which relief can be granted because Hussaini did not allege in her petition that she was an at-will employee.

On September 14, 2010, Hussaini filed a resistance to Gelita's Motion to Dismiss. In her resistance, Hussaini argues that her state law claims are not preempted by the NLRA because her claims are not identical to the claims presented to the NLRA. She further argues that her claim of wrongful discharge in violation of public policy should not be dismissed for failure to state a cause of action because the Iowa Supreme Court would recognize such a claim where the plaintiff was fired to cover up violations of the NLRA. Finally, Hussaini argues that she is not required to plead that she was an at-will employee in order to state a claim of wrongful discharge in violation of public policy. Gelita did not filed a reply brief, but did file copies of filings in two cases, case no. 18-CA-19458 and case no. 18-CA-19478, currently pending before the National Labor Relations Board ("NLRB").

On October 28, 2010, the court heard telephonic oral arguments on defendant Gelita's Motion to Dismiss. Plaintiff Hussaini was represented by Paul D. Lundberg of Lundberg Law Firm, P.L.C., Sioux City, Iowa. Defendant Gelita was represented by Roger J. Miller and Abigail M. Moland of McGrath North Mullin & Kratz, P.C. L.L.O.,

Omaha, Nebraska.  Before discussing the standards for defendant Gelita's Motion to Dismiss, the court will first examine the factual background of this case.

## B. Factual Background

On a motion to dismiss, the court must assume all facts alleged in Hussaini's petition are true, and must liberally construe those allegations.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Accordingly, the following factual background is drawn from Hussaini's petition in such a manner.

Qudsia Hussaini is a resident of Dakota County, Nebraska.  Gelita is a Delaware Corporation authorized to do business in the State of Iowa.  It has a facility in Sergeant Bluff, Iowa.  Hussaini was employed as a laboratory technician at Gelita's Sergeant Bluff facility for over thirteen years.

In 2008, employees at Gelita's Sergeant Bluff facility were unionized and represented by United Food and Commercial Workers International Union Local #1142 ("the Union").  Hussaini, however, had voted against certification of the Union as the laboratory employees' collective bargaining representative.  In September 2009, Melissa Simon, Gelita's Sales Manager, gave Hussaini an envelope containing information on how to obtain a decertification petition from the District National Labor Relations Board office to decertify the Union as the laboratory employees' collective bargaining representative. After Simon gave Hussaini the decertification information, Simon promised Hussaini that, if she obtained the signatures necessary to hold a decertification election for laboratory employees, Hussaini's job would be protected, she would be protected from harassment by Union members, and she would be promoted.  Simon made this promise as Gelita's authorized managerial representative.  When Hussaini questioned Simon about Simon's

4

promises to her, Simon reassured Hussaini that Simon's promises to her had been explicitly authorized by Jeff Tolsma, Gelita's Vice President of Human Resources.

After Hussaini was given the decertification materials by Simon, Gelita's management gave Hussaini assistance in preparing the necessary paperwork and obtaining signatures for the decertification election. Tolsma and Dean Wood, who was in charge of the Q.C. Laboratory, were among those Gelita management employees providing assistance to Hussaini in her decertification efforts. Hussaini was able to obtain the necessary signatures to hold the decertification election despite direct harassment from Union members. As a result of the decertification election, the Union was decertified as the laboratory employees' collective bargaining representative.

On June 11, 2010, Hussaini, and four other laboratory employees were summarily fired by Gelita. The other four employees fired at the same time as Hussaini were active Union supporters who supported the Union in the decertification election. Hussaini and the other four employees were told that they were being fired as part of a downsizing effort by Gelita. Gelita's reason for firing the five employees was a pretext for their firing, because Gelita was actively hiring new laboratory technicians the same week that the five were fired. Gelita fired Hussaini with the four other employees to mask Gelita's intent to discharge the other four for their pro-Union activities.

On June 16, 2010, Hussaini filed a charge of unfair labor practices against Gelita with the NLRB, case no. 18-CA-19458. On June 30, 2010, the Union also filed a charge of unfair labor practices against Gelita with the NLRB, case no. 18-CA-19478. Hussaini

and the Union's cases before the NLRB have been consolidated and are currently pending adjudication.[2]

---

[2] Where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(d). In this case, in her resistance to Gelita's motion, Hussaini has attached a copy of the order consolidating the two charges of unfair labor practices against Gelita presently before the NLRB. Gelita has also filed a copy of that order, as well as copies of the complaints filed in two NLRB cases, case no. 18-CA-19458 and case no. 18-CA-19478. As noted above, consideration of records and documents not attached to the complaint, or not expressly incorporated in the complaint, is typically forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. *See* FED. R. CIV. P. 12(d). However, courts have made "'narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 47 n.1 (1st Cir. 2009) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)); *see Noble Systems Corp. v. Alorica Cent., L.L.C.*, 543 F.3d 978, 983 (8th Cir. 2008) (holding that secured creditor's financing statement was public record of which district court could take judicial notice in considering motion to dismiss); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3rd Cir. 2010); *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008); *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008); *Pugh v. Tribune Co.*, 521 F.3d 686, 692 n.2 (7th Cir. 2008); *Kavowras v. New York Times*, 328 F.3d 50, 57 (2nd Cir. 2003). *See generally* 5A C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 (1990) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account."). Accordingly, the court is free to take into account the attached NLRB order consolidating the two charges of unfair labor practices against Gelita in considering Gelita's Motion to Dismiss without transforming it into a motion for summary judgment. *See Kavowras*, 328 F.3d at 57 (holding that district court did not err in considering plaintiff's NLRB charge on the defendants' motion to dismiss because "[j]udicial notice may be taken of public filings. . .").

## II. LEGAL ANALYSIS

Gelita seeks dismissal of all claims asserted against it for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] After reviewing the standards for a motion to dismiss, the court will address the specific issues raised by Gelita's motion *seriatim.*[4]

---

[3] The first task for the court is to determine the appropriate standard to consider Gelita's motion. Although Gelita has moved for dismissal under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the court lacks subject matter jurisdiction, neither party has suggested which rule applies to that contention. The concept of subject-matter jurisdiction refers to the court's power to hear the case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998). Gelita removed this case from Iowa state court based on diversity-of-citizenship jurisdiction. *See* 28 U.S.C. § 1332(a). While Gelita seeks dismissal of all Hussaini's claims against it for lack of subject matter jurisdiction, Gelita never explains how, if this court has no power to hear the case, it has the power to determine whether Hussaini's state law claims are preempted by the NLRA, or, conversely, how a finding that Hussaini's state law claims are preempted would implicate this court's subject matter jurisdiction. None of the cases cited by Gelita even *mention* the concept of subject-matter jurisdiction. Accordingly, the court concludes that the preemption issue should be decided under Rule 12(b)(6). *See Grisham v. United States,* 103 F.3d 24, 25 (5th Cir. 1997) (applying Rule 12(b)(6) to preemption issue); *See Quiller v. Barclays Am./Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir. 1984) (recognizing that issue of preemption can be the basis of a Rule 12(b)(6) motion).

[4] The parties do not argue that anything other than Iowa law should apply, and both Hussaini and Gelita utilize Iowa statutory law in their briefs. In the absence of a dispute between the parties, the court assumes Iowa law applies and, furthermore, notes that Iowa has the most significant relationship to this case because all of the events giving rise to this litigation occurred in Iowa. Therefore, the court will consider each of these tort claims under Iowa law.

## A.  Standards For A Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[5] In its decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216,

---

[5]Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. CIV. P. 12, advisory committee's note.  The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.*  The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Thus, the amendment did not change the standards for a Rule 12(b)(6) motion.

pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) (" [T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (instructing that "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

Nevertheless, the court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, 569 F.3d at 865 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-

27 (1989)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

## B. NLRA Preemption

### 1. Garmon *framework*

Gelita argues that Hussaini's claims are all preempted because they fall within the exclusive jurisdiction of the NLRB. Specifically, Gelita contends that Hussaini's claims are preempted by Sections 7 and 8 of the NLRA.[6] *See* 29 U.S.C. §§ 157, 158. It is

---

[6] Section 7 outlines those rights employees have under the NLRA and provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

(continued…)

29 U.S.C. § 157. "Sections 8(a) and 8(b) define certain employer and union practices as unfair labor practices." *Local 926, Int'l Union of Operating Engineers, AFL-CIO v. Jones*, 460 U.S. 669, 672 n.3 (1983). In particular, § 8(a) provides that it is an unfair labor practice for an employer:

> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

> (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: *Provided*, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election

(continued...)

well established that state-law claims are presumptively preempted by the NLRA when they concern conduct that is actually or arguably either protected or prohibited by the NLRA. *See Building & Trades Council v. Associated Builders and Contractors of Mass./R.I.*, 507 U.S. 218, 224-25 (1993); *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983); *Local 926, Int'l Union of Operating Engineers, AFL-CIO v. Jones*, 460 U.S. 669, 676 (1983); *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180,187-88 (1978); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243-45 (1959).

---

[6](…continued)

> have voted to rescind the authority of such labor organization to make such an agreement: *Provided further*, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

> (4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;

> (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

29 U.S.C. § 158(a).

Over fifty years ago, in *Garmon*, the United States Supreme Court established one general framework for determining whether particular state-law claims are preempted by the NLRA. *See Garmon*, 359 U.S. at 243-45. In *Garmon,* the Court vacated a state court award of tort damages against a labor union that engaged in picketing. *Id*. at 246. In doing so, the Court announced a rule of preemption for state law based claims that touched on conduct protected or prohibited by the NLRA:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. . .
>        . . . .
> . . . .When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

*Garmon*, 359 U.S. at 244-45.

Thus, a court need not decide whether the alleged conduct would be prohibited by the NLRA to decide whether it is preempted since all that is required under *Garmon* is that the conduct upon which the state cause of action is based is "arguably" prohibited. *See id*. at 245. As the Court explained in *Garmon,* it is for the NLRB, not the courts, to decide whether the particular conduct controversy falls within the scope of § 7 or 8 of the NLRA:

> At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board.
>
> . . . . .
>
> ... In the absence of the Board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction.

*Garmon,* 359 U.S. at 244-46.

The Supreme Court further explained that "to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy." *Id.* at 247. The Court subsequently summarized the framework it established in *Garmon* as follows:

> [S]tate regulations and causes of action are presumptively preempted if they concern conduct that is *actually or arguably either prohibited or protected by the Act.* The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility. In such cases, the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the Act, and the risk that the State will sanction conduct that the Act protects.

*Belknap*, 463 U.S. at 498-99 (citations omitted) (emphasis added); *see also Jones*, 460 U.S. at 676. Thus, to determine whether Hussaini's state law claims are preempted under the *Garmon* doctrine, the court must ask "whether the conduct at issue was arguably

protected or prohibited by the NLRA." *International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 394 (1986).

As the Eighth Circuit Court of Appeals has explained:

> The rationale behind the *Garmon* preemption doctrine derives from the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2; *Smith v. Nat'l Steel & Shipbuilding Co.,* 125 F.3d 751, 755 (9th Cir. 1997); *Britt v. Grocers Supply Co.,* 978 F.2d 1441, 1445-46 (5th Cir. 1992). "*Garmon* and its progeny [were] primarily concerned with the conflict between federal labor policy and state laws." *Smith,* 125 F.3d at 755.

*Lupiani v. Wal-Mart Stores, Inc.*, 435 F.3d 842, 846 (8th Cir. 2006). In this case, like *Garmon*, the potential conflict is between the NLRA and state law. Here, Gelita, as the party claiming that all of Hussaini's Iowa state common law claims are preempted by the NLRA, bears the burden of showing that the challenged conduct is arguably prohibited or protected by the NLRA. *See Davis,* 476 U.S. at 395; *see also Ohio Adm'r, Inc. v. Walcher & Fox, Inc.,* 270 F.3d 1018, 1027 (6th Cir. 2001) ("The party arguing *Garmon* preemption bears the burden of showing that the conduct at issue is prohibited or protected by the [NLRA]."). Accordingly, the court must conduct a *Garmon* analysis of each of Hussaini's three state causes of action in this case to ascertain whether they are

preempted.[7]

### 2.    **Garmon** *analysis of Hussaini's causes of actions*

### a.    *Discharge in violation of public policy claim*

In Count One, Hussaini sets out a claim of discharge in violation of public policy. Under Iowa law, "[a]bsent a valid contract of employment, an employment relationship is generally considered to be inherently indefinite and presumed to be at-will." *Fitzgerald v. Salsbury Chem., Inc.,* 613 N.W.2d 275, 280 (Iowa 2000) (citing *Anderson v. Douglas & Lomason Co.,* 540 N.W.2d 277, 281 (Iowa 1995)); *see Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 761 (Iowa 2009). An at-will employment relationship may be terminated by either party "'at any time, for any reason, or no reason at all.'" *Fitzgerald,* 613 N.W.2d at 280 (quoting *Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 202 (Iowa 1997)); *see also Theisen v. Covenant Med. Ctr., Inc.,* 636 N.W.2d 74, 79 (Iowa 2001) ("The doctrine of employment-at-will, well-established in Iowa law, permits an employer or employee who is not under contract to terminate employment at any time for any lawful

_____

[7] A second NLRA preemption analysis has also developed commonly referred to as *Machinists* preemption. *See Lodge 76, Int' Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132 (1976). *Machinists* preemption, however, "which is broader than *Garmon* preemption, 'protects against state interference with policies implicated by the structure of the [NLRA] itself, by pre-empting state law and state causes of action concerning conduct that Congress intended to be unregulated.'" *Miner v. Local 373*, 513 F.3d 854, 865 n.8 (8th Cir. 2008) (quoting *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 749 (1985)). Thus, *Machinists* preemption "'focuses on protecting the collective bargaining process from interference by the states.'" *Miner*, 513 F.3d at 865 n.8 (quoting *Williams v. Watkins Motor Lines, Inc.*, 310 F.3d 1070, 1072 (8th Cir. 2002)). Here, neither party contends that the *Machinists* preemption analysis is applicable, and the court does not find it applicable in this case. Accordingly, the court looks solely to whether *Garmon* preemption is applicable to Hussaini's state law claims.

reason."). However, the Iowa courts have recognized two narrow exceptions to the general rule: (1) "tort liability where a discharge is in clear violation of a 'well-recognized and defined public policy of the State;'" and (2) "employee handbooks that meet the requirements for a unilateral contract." *Anderson,* 540 N.W.2d at 282 (quoting *Springer v. Weeks & Law enforcement officer Co.,* 429 N.W.2d 558, 560 (Iowa 1988) ("*Springer I*")); *see Fitzgerald,* 613 N.W.2d at 281; *see also Theisen,* 636 N.W.2d at 79 (recognizing the public policy exception and employee handbook exception to the doctrine of at-will employment). "Thus, the traditional doctrine of permitting termination 'at any time, for any reason, or no reason at all,' is now more properly stated as permitting 'termination at any time for any *lawful* reason.'" *Fitzgerald,* 613 N.W.2d at 281 (internal citations omitted). In this case, Hussaini claims that her employment with Gelita was terminated in violation of a public policy.

The Iowa Supreme Court first recognized such a claim in *Springer I. See Springer I,* 429 N.W.2d at 560. In *Springer I*, the plaintiff alleged she was fired from her job because she had filed a workers' compensation claim and contended that her firing constituted a discharge in violation of public policy. *Id.* at 558-59. Reversing the decision of an Iowa district court, which had entered a directed verdict in favor of the employer, the Iowa Supreme Court recognized a remedy for employees at-will who are terminated "when the discharge serves to frustrate a well-recognized and defined public policy of the state." *Id.* at 560. The Iowa Supreme Court found such a public policy in the protections of the Iowa's workers' compensation statute, and concluded that this statute evinced "a clear expression that it is the public policy of [Iowa] that an employee's right to seek the compensation which is granted by law for work-related injuries should not be interfered with regardless of the terms of the contract of hire." *Id.* at 560-61. The Iowa Supreme Court further concluded that allowing the firing of an employee seeking workers'

17

compensation benefits would undercut that public policy, "by sanctioning wrongful discharge actions for contravention of a public policy which has been articulated in a statutory scheme, we are acting to advance a legislatively declared goal." *Id.* at 561.

Since recognizing a claim of discharge in violation of public policy in *Springer I*, the Iowa Supreme Court has acknowledged several other violations of public policy sufficient to give rise to such a claim. *See Jasper*, 764 N.W.2d at 767-68 (firing for refusing to violate administrative rule regarding ratio of children to care providers for day-care facility); *Fitzgerald,* 613 N.W.2d at 286 (discharge for refusing to commit perjury); *Teachout v. Forest City Cmty. Sch. Dist.,* 584 N.W.2d 296, 300 (Iowa 1998) (termination of employees for attempting to report child abuse); *Lara v. Thomas,* 512 N.W.2d 777, 782 (Iowa 1994) (discharge of employees for pursuing partial unemployment benefits); *see also Wilcox v. Hy-Vee Food Stores, Inc.,* 458 N.W.2d 870, 872 (Iowa Ct. App. 1990) (retaliatory discharge of employee who refused to take a polygraph test).

In order to prevail on her claim of wrongful discharge in violation of public policy, Hussaini must prove:

> (1) existence of a clearly defined public policy that protects employee activity; (2) the public policy would be jeopardized by the discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason for the employee's discharge; and (4) there was no overriding business justification for the termination.

*Jasper*, 764 N.W.2d at 761 (citing *Lloyd v. Drake Univ.,* 686 N.W.2d 225, 228 (Iowa 2004)); *see Davis v. Horton,* 661 N.W.2d 533, 535-36 (Iowa 2003) (setting out the same four element test); *Springer v. Weeks & Law enforcement officer Co.,* 475 N.W.2d 630, 633 (Iowa 1991) (*Springer II*) (approving a jury instruction with five elements substantially similar to the four elements listed above).

The preemption issue here turns on the public policy element of the tort. Iowa courts have typically looked to statutes or administrative regulations as the source of a public policy. *See Jasper*, 764 N.W.2d at 762; *Teachout,* 584 N.W.2d at 300; *Lara,* 512 N.W.2d at 782; *Springer I,* 429 N.W.2d at 560. Here, Hussaini concedes that the public policy at issue is the firing of the four Union supporters in violation of the NLRA and Gelita's attempt to cover up this violation by firing her too. Thus, Hussaini is alleging that Gelita's violation of public policy is its engaging in unfair labor practices in violation of § 8 of the NLRA, namely, "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). Thus, the same conduct which forms the basis of Hussaini's discharge in violation of public policy claim also underlies the unfair labor practice charges currently before the NLRB, and the same facts would need to be determined in each proceeding. This creates a risk of conflicting rulings from this court and the NLRB, and threatens to interfere with the NLRB's enforcement of national labor relations policy. *See Jones,* 460 U.S. at 682 (state claim preempted where fundamental element of claim also had to be proved to make out a case under the NLRA).

Hussain argues that her state law claims are not preempted because her state law claims involve different elements than those unfair labor practice claims presently before the NLRB. Hussaini urges this court to adopt an identical element test for preemption based upon this statement found in *Sears*:

> The critical inquiry . . . is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in *Garner*) or different from (as in *Farmer*) that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk

19

> of interference with the unfair labor practice jurisdiction of the
> Board which the arguably prohibited branch of the *Garmon*
> doctrine was designed to avoid.

*Sears*, 436 U.S. at 197. The court declines to adopt such a test here. First, the court notes that in *Sears* the Supreme Court spoke in broad terms of "the controversy presented" rather than using more restrictive language such as the claims or issues presented. The controversy here, Gelita's firing of the pro-Union supporters in violation of the NLRA and its attempt to cover up that action by also firing Hussaini, is identical to the controversy before the NLRB. Moreover, it must be recognized that a NLRB proceeding and a state-law cause of action will, by definition, deal with different claims and if this lack of identity were conclusive, state claims would never be preempted. Accordingly, the test urged by Hussaini would require the court to abandon more than half a century of federal policy that places exclusive jurisdiction over issues of national labor relations in the hands of the NLRB. In the absence of more explicit direction from Congress or the Supreme Court, Hussaini has failed to offer a sufficiently compelling reason for the court to do so here.[8] Therefore, the court concludes that because Hussaini's discharge in violation of public policy claim involves activity that is either actually or arguably prohibited by the NLRA and the resolution of it here would risk substantial interference with the jurisdiction of the NLRA, that claim is preempted under the *Garmon* analysis. Accordingly, Gelita's Motion to Dismiss is granted as to Count I of Hussaini's petition.

---

[8] Hussaini also points out that the certain damages she seeks through her state law claims cannot be provided by the NLRB. However, the Supreme Court has held that the fact that the NLRB cannot provide the same damages as a state court remedy is an insufficient reason by itself to warrant holding preemption inapplicable. *See Jones,* 460 U.S. at 684; *Garmon,* 359 U.S. at 246-47.

### b.     *Promissory estoppel claim*

In Count Two, Hussaini alleges a claim of promissory estoppel.  Under Iowa law, the elements of promissory estoppel are:

> "(1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise."

*Kolkman v. Roth,* 656 N.W.2d 148, 156 (Iowa 2003) (quoting *Schoff v. Combined Ins. Co. of Am.,* 604 N.W.2d 43, 47 (Iowa 1999)); *see also In re Marriage of Harvey,* 523 N.W.2d 755, 756 (Iowa 1994) (citing *Merrifield v. Troutner,* 269 N.W.2d 136, 137 (Iowa 1978)); *Farmers State Bank v. United Cent. Bank of Des Moines,* 463 N.W.2d 69, 71 (Iowa 1990); *National Bank of Waterloo v. Moeller,* 434 N.W.2d 887, 889 (Iowa 1989); *City of Cedar Rapids v. McConnell-Stevely-Anderson Architects & Planners, P.C.,* 423 N.W.2d 17, 19 (Iowa 1988); *Estate of Graham v. Fergus,* 295 N.W.2d 414, 418 (Iowa 1980); *Merrifield v. Troutner,* 269 N.W.2d 136, 137 (Iowa 1978); *Uhl v. City of Sioux City,* 490 N.W.2d 69, 73 (Iowa Ct. App. 1992). The party asserting the doctrine of promissory estoppel as its theory of recovery has the burden of proving this theory, and "strict proof of all elements is required." *National Bank of Waterloo,* 434 N.W.2d at 889 (citing *Pillsbury Co. v. Ward,* 250 N.W.2d 35, 39 (Iowa 1977)).

Here, the gravamen of Hussaini's promissory estoppel claim is that Gelita promised her job security, protection from harassment and a promotion in exchange for her obtaining the signatures necessary to hold an election to decertify the Union as the laboratory employees' collective bargaining representative.  Petition at ¶ 22.  As a result of Gelita's promises, Hussaini, with the aid of Gelita's management, "obtained[ed] the

necessary signatures for the decertification election in direct violation of the National Labor Relations Act." Petition at ¶ 9. Although Hussaini provided all the assistance requested by Gelita, Gelita nonetheless fired her, breaching its promise to her. Petition at ¶¶ 25, 28. Gelita fired Hussaini with the four other employees in order to hide Gelita's intent to discharge the other four workers for their pro-Union activities. Petition at ¶ 11.

Under these alleged circumstances, Hussaini and Gelita acted together to engage in unfair labor practices prohibited by § 8 of the NLRA. Thus, Hussaini's promissory estoppel action concerns "conduct that is *actually or arguably either prohibited or protected by the Act.*" *Belknap*, 463 U.S. at 498 (citations omitted) (emphasis added). Clearly, in determining whether Gelita has committed unfair labor practices against its workers and the Union, the NLRB's focus will be on whether Gelita asked Hussaini to front its efforts at having the Union decertified, and then pretextually fired her with the four pro-Union workers in an attempt to mask its true reason for its firing of the four pro-Union employees, those employees' efforts against decertification of the Union as the laboratory employees' collective bargaining representative. Gelita's conduct, if proven to be true, would constitute an unfair labor practice in violation of § 8(a)(3) of the NLRA, which provides that it is an unlawful labor practice for an employer to discharge or otherwise discriminate against an employee in retaliation for the employee's union activity. 29 U.S.C. § 158(a)(3); *see Hospital Cristo Redentor, Inc. v. N.L.R.B.*, 488 F.3d 513, 518 (1st Cir. 2007) ("An employer violates section 8(a)(3), as well as section 8(a)(1), by discharging an employee for engaging in union activities."); *6 West Ltd. Corp. v. N.L.R.B.*, 237 F.3d 767, 778 (7th Cir. 2001) ("A company is free to discharge its employees 'for good, bad, or no reasons, so long as its purpose is not to interfere with union activity.'") (quoting *Carry Cos. of Ill. v. N.L.R.B.*, 30 F.3d 922, 926 (7th Cir. 1994)); *USF Red Star, Inc. v. N.L.R.B.*, 230 F.3d 102, 106 (4th Cir. 2000) ("A company

violates 29 U.S.C. § 158(a)(3) if it discharges an employee for engaging in protected union activity."); *N.L.R.B. v. Talsol Corp.*, 155 F.3d 785, 797 (6th Cir. 1998) (noting that "'if the employer fires an employee for having engaged in union activities and has no other basis for the discharge, or if the reasons that he proffers are pre-textual, the employer commits an unfair labor practice.'") (quoting *N.L.R.B. v. Transp. Management Corp.*, 462 U.S. 393, 398 (1983)). Consequently, Hussaini's promissory estoppel claim lies within the exclusive jurisdiction of the NLRB. This court, therefore, lacks jurisdiction to hear this claim because it is preempted by the NLRA. Accordingly, Gelita's Motion to Dismiss is granted as to Count II of Hussaini's petition.

### c.    *Fraudulent misrepresentation claim*

Hussaini also alleges a claim of fraudulent misrepresentation against Gelita. In order to establish her claim of fraudulent misrepresentation, Hussaini must prove:

> (1) [the defendant] made a representation to [the plaintiff]; (2) the representation was false; (3) the representation was material; (4) [the defendant] knew the representation was false; (5) [the defendant] intended to deceive [the plaintiff]; (6) [the plaintiff] acted in reliance on the truth of the representation and was justified in relying on the representation; (7) the representation was the proximate cause of [the plaintiff's] damages; and (8) the amount of damage.

*Midwest Home Distributor, Inc. v. Domco Indus., Ltd.*, 585 N.W.2d 735, 737 (Iowa 1998) (citing *Magnusson Agency v. Public Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 27-28 (Iowa 1997)); *accord Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005); *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 233 (Iowa 2004); *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001).

Hussaini's fraudulent misrepresentation claim is grounded on the same circumstances giving rise to her promissory estoppel claim. She alleges that Gelita

represented to her that she would have job security, protection from harassment, and a promotion in exchange for her assistance in obtaining the signatures necessary to hold an election to decertify the Union as the laboratory employees' collective bargaining representative. Petition at ¶ 31. Gelita's representation was false and made with the intention of deceiving Hussaini. Petition at ¶¶ 32, 35. Hussaini acted in reliance on Gelita's representation, and that representation was the proximate cause of her being damaged. Petition at ¶¶ 36-37.

For the same reasons discussed above with respect to Hussaini's promissory estoppel claim, the court concludes that this claim is also preempted by the NLRA under the *Garmon* doctrine. Again, this court's inquiry must focus on the overlap between this cause of action and the current NLRB actions. Any determination of this claim necessarily rests on whether Gelita recruited Hussaini to act as its secret intermediary in its attempt to decertify the Union but than fired her along with the four pro-Union workers in order to hide its true reason for their firing, a retaliatory discharge grounded in Gelita's anti-Union animus. As such, resolution of this claim is also substantially dependent upon, and inextricably intertwined with, the claims of unfair labor practices presently before the NLRB. Thus, this claim not only implicates provisions of the NLRA, but allowing this claim to proceed runs the risk of a conflict between the judiciary and the NLRB. Therefore, Hussaini's fraudulent misrepresentation claim is preempted under the NLRA. Accordingly, Gelita's Motion to Dismiss is also granted as to Count III of Hussaini's petition.[9] Although Supreme Court precedent requires the court to dismiss Hussaini's

_____

[9]Having concluded that Gelita's Motion to Dismiss must be granted on the ground that all of Hussaini's state law claims are preempted, the court does not address Gelita's alternative contentions that Hussaini's wrongful discharge in violation of public policy
(continued...)

state law claims in this case because they are preempted under the NLRA, the court recognizes that such a result is lamentable. The facts of this case, as alleged, are troubling and it is unfortunate that NLRA preemption closes the doors of the courthouse to Hussaini, depriving her of the opportunity to seek a full, adequate and complete remedy in this court.

### III. CONCLUSION

After conducting a *Garmon* preemption analysis of each of Hussaini's three state law claims in this case, the court concludes that all three state law claims are preempted by the NLRA. Thus, defendant Gelita's Motion to Dismiss is granted.

**IT IS SO ORDERED.**

**DATED** this 4th day of November, 2010.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

_____

[9](…continued)
claim must be dismissed for failure to state a cause of action.